Good morning, your honors. May it please the court. I would like to reserve three minutes if I could. My name is Quinn Denver. I represent the appellant Odey Mounsaveng. This is an unusual case in many ways, but in particular because we know that there was a due process violation here. That's what the state appellate court found, and that's what the state concedes. So the only question is can it be dismissed is harmless, and I think there's several reasons why it cannot be. Three facts are very important here. First of all, the question of duress. Under federal law, the presence of duress is an affirmative defense. The burden is on the defendant to prove it by a preponderance of the evidence. That's not true under California law. That's the critical point. The absence of duress is an element of the offense with the burden of beyond a reasonable proof is on the prosecution. So I think that's the critical point here. And we think these facts, by the way, all of them would point either to reversible per se under Sullivan v. Louisiana or for reversible on the basis of having an injurious effect under Breck v. Abrahamson. The second thing here is that this case is different than many of the other cases because it's not a question of diluting the prosecution's burden of proof. This was actually a shift of the burden of proof to the defendant. So in that sense, it is worse than Sullivan v. Louisiana where there was a reasonable doubt instruction given, but then the jury was also told it only had to be maybe a grave uncertainty or an actual substantial doubt. So we think that this is even a more serious violation. And the third thing, which is critical here, is that this is a case where we know that the trier effect shifted the burden of proof in violation of due process. And that's in that way. Kagan. Mr. Denver, the case law about structural error versus harmless error turns for the most part on the practicality of determining harmlessness. There's another strain, which is the individual representation, self-representation strain, but generally that's what the concerns are. And here we have a judge who spelled out his reasoning. And whether one – however one reads what he said, whether he said that it was only the uncharged crimes as to which it was a prima facie case of duress or whether it was everything, whether it was burden of proof, remarks went to everything. He also said that it was clear that essentially that for the charged crimes there was not duress because there was enough intervening time to have gone to the authorities and so on. I know you challenged that. But leaving that aside for now, why isn't that enough that we can look and we can say, well, look, he said what he was thinking, and what he was thinking was that there's just no way that for the later crimes there could be duress? Your Honor, as to the question of whether it's reversible per se or not, I'm prepared to argue it under Brecht because I understand that the Sullivan standard has not been used very often. But I think here's what the judge did. He said, He then said some other things, which I will address in a minute. He said that having found the duress as to each defendant does not rise to the level of a preponderance of the evidence, but at best would be evenly balanced. Now, that would indicate that it might be a totally different result if he was looking at this under the proper burden of proof. I'd like to address it, Your Honor. But let me just point out one thing about why I think that you can't say the only standard to the uncharged crimes, the wrong burden of proof, and did the right one to the charged crime. Because he says, as clearly as can be, the Court simply finds insufficient evidence of that duress to affect any of these charges or enhancements. And furthermore, it makes no sense that having been told by the prosecutor that the burden was on the defendant, that the judge would say, I'm going to follow the prosecutor as to the uncharged crimes, which there's no burden on, and then I'm not going to follow him as to the charged crimes. And so I think that's the problem. And, in fact, the question is, can we find that determination unreasonably clear? And I don't think that's the point. I mean, obviously, he did apply the wrong standard. But in the course of applying the wrong standard, he spelled out his thought process in a way that we can – that the State court at least thought that it was clear what he would have done had he applied the right standard. And the question is, can we find that determination unreasonable? It's not that he applied the right standard to some and the wrong standard to others. But the only – the only finding he made was that there was an opportunity between the uncharged crimes and the first crime for Mr. Museveng to go to the police and tell him about the uncharged crimes. He didn't know there were going to be further charged crimes coming. We've already argued, and I – that this reasonable alternative to committing the crime when you're under duress is not part and element of the duress under California law. The court held otherwise. I understand that. But here's the key point. The nature of the duress defense is that there's this immediate threat. So if there's a reasonable alternative, it must be while you're acting under that threat. It doesn't mean you have to go out and have a reasonable opportunity to prevent being threatened, to go to the police and say, I was threatened in the past. Arrest him because I don't want him to threaten me on these future crimes. What they talk about here – and it's very clear if you look at the notes to the standard instruction there. They say that the necessity defense is different because in that it's in the immediate future. And that permits a defendant to balance alternative courses of action. The duress defense, on the other hand, does negate an element of the crime. The defendant does not have time to form the criminal intent because of the immediacy of the threatened harm. Now – Sotomayor, do you dispute then, or is it undisputed, that he did have time between – some time over the course of conduct between the uncharged and the charged that we accept as the court, the State court did, that that was the key inquiry? No, I don't think it's the key inquiry. I think that – I don't think it's the key inquiry, but the court did. And so do you dispute that there was enough time? There was a time period there where, having been forced to participate in the uncharged crimes, he could have gone to the police and said, I was forced to commit those crimes. I think there's no doubt about it. There's reasons why he would not do that, of course. One was that he'd been threatened he'd be killed if he did. Another was the fact that when he had reported earlier crimes against him to the police and police reports had been put in, nothing happened. And then there was also the fact that he had outstanding warrants. But there is time there. But here's my point, Your Honor. As to one of these, he says – he put a gun to my head and said he will kill me. At that point, he had no reasonable alternative. They didn't prove that he had some alternative at that point to say, well, I'll call the police, I'll go over here. And the problem is the prosecution didn't address the immediacy of the crimes or the reasonable alternatives. They left it – they treated it as if it was a problem of the defense doing it. So we have – what we have at most, you have somebody saying he could have prevented the threat as to the first crime because he could have turned them in. But he says, I was – I didn't do that. I'm not sure I had to do that. It's not misapprehension of felony. But I was threatened all these other times. And they – and the prosecution didn't say that they weren't imminent threats. They didn't take that on. Just to make sure I understand, you're saying as to the six charged offenses, as to each one of those, he either literally or figuratively had a gun to his head? No, as one of them, he testifies specifically as to the gun. The other – every other one, he says he did it because I was forced to, they threatened me and my family, as to each of them. And he says to all five of them. So he raises enough of a reasonable doubt as to the presence of duress that the burden shifts to the prosecution. The prosecution, then, can do one of two things. They can say that he's not credible, but the judge never suggested that. They can prove it wasn't an imminent threat of death. They didn't do that. Or they could say, having been threatened in that way, he could – he had a reasonable alternative to committing the crime. That's how it breaks out here. And none of the – the court of appeal didn't deal with any of that. There was one – Mr. Red Herring, I don't understand, which is I gather there's some California law that you can't have a duress defense to murder. Is that right? That's correct, Your Honor. But you can to felony murder as to the felony, and that's what he was convicted of. I see. I see. That was the comment there. You can't have duress to the murder, but you can to the underlying felony for felony murder purposes. So there was a duress defense to all the crimes. All right. Now, how – with regard to the argument you just made, aren't we kind of precluded even from reaching it, because it's a State law argument that essentially the California court of appeal seems to have disagreed with you? No, Your Honor. I agree that you cannot say that there isn't a reasonable alternative element to the duress defense under California law. I think that's wrong, but they've held that. But you can then look at how they've held that, and they've said the elements of that defense is a threat of immediate death, no reasonable alternative. And you can say that this court, this trial court, never addressed those in any way at all. They did not address it as to any of the five charged crimes. That's really a sufficiency of the evidence kind of an argument, not a shifted burden argument. No, Your Honor, because under Brecht, the question is, did it have a substantial or injurious effect or influence on the verdict? And the fact that he treated it in the wrong way because he treated it as a burden on the defense instead of a burden on the prosecution, it clearly had an injurious effect. And, I mean, if he had addressed it properly, there's a very good chance there would have been a reasonable doubt on it. The prosecution just didn't do their thing. Thank you very much. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Justin Riley on behalf of the Warden. I'd like to point out something about the trial court's finding there on the excerpts of record, page 1. That's at line 23 and 24 and 25. The trial court specifically holds that even though he thinks that Mr. Moonsavang established a prima facie case that would lead the trial court to believe there is a possibility that the initial entry into the robbery was duress. This is not proof, and I'm at line 24, rising to a probability and would only apply to the uncharged robberies, only apply to the uncharged robberies. In the face of such clear language, I don't think that we can say that the State appellate court's parsing of this ruling was unreasonable. Mr. Moonsavang has to prove. I think we've done away with the idea that this is structural error here, but this Court's decision in Bird v. Lewis makes that clear. Mr. Moonsavang has to prove that this error, alleged error, did not have a substantial injurious effect on the verdict. Yes. The Court says the standard is preponderance of the evidence. Yes. And then the Court was unable to clear that defendant in time. How do I know that clear that is the same as beyond a reasonable doubt? Well, you have to take the ruling as a whole, I think, and there on page 1 of the excerpts of record, the portion I just read to you, the Court did apply the preponderance standard, but made it, I don't want to use the word clear, but it was clear that that only applied to the uncharged robberies. And then on the subsequent page, when the Court said it's clear that he had the alternative, he wasn't necessarily applying the burden of proof there. He was just telling the parties what about the evidence he believed. He didn't believe the duress defense. He just didn't. So are you, to follow up on Tejikuda's question. Yes. It seems, therefore, that you're saying that we really couldn't say that he was applying a beyond reasonable doubt standard. Instead, you seem to be saying where the harmlessness is not based on what he decided, but on what he would have decided had he applied the right rule? That is also something we can look at, but not necessarily because, and unfortunately, some of the Court's ruling is cut off here. But you can see from the top of page 1 on the excerpts of record that the trial court went down the line as to each count and said specifically, I find beyond a reasonable doubt that all the elements of each of these counts were proved true. Now, when it comes to the defense, on the other hand, this is a defense where if the judge believes the facts of the defense, then he can go back to his finding on each other situation, the mens rea element of the underlying felony, and he can say, well, if I believe those facts, maybe I do have a reasonable doubt as to the mens rea element, but he didn't believe the facts. And unfortunately, the Court refused to do that. So what you're saying is that the findings on each individual crime were reasonable doubts? Yes. And that's sufficient. And the trial court specifically said that. Now, in explaining what he believed and didn't believe, the Court said, you know, I really don't believe that this – that it was duress because there was an intervening – excuse me – intervening period there. And the State court of appeals said if the trier of fact finds that there was an intervening period in which the defendant could have sought help or what have you, then there is no duress defense. It will not negate the mens rea element of the offense if there is that intervening period. The trial court found there was an intervening period. Oh, take Mr. Denver's argument. I mean, why is that true if the next time somebody has a gun to his head? I think I missed the beginning part of that question. Why is that true? The argument Mr. Denver was making is that that can't be right if there is actual duress as to the actual crime, that if somebody comes back, if he doesn't go to the authorities, he didn't, but in fact, at the time he's committing the second crime, somebody has a gun to his head. It may have been duress. It depends on what the trier of fact believed about the evidence. Sure. If the trier of fact believed all that evidence, yes, it might have been duress.    It depends on what the trier of fact believed about the evidence. So the opportunity to go to the authorities in the meantime isn't dispositive? I believe the State court of appeal here said it was dispositive. We can't look behind that. Well, that's what I'm asking you. Is that what they meant or said? They didn't quite address it directly head on, did they? I believe they did. And the court of appeal opinion appears at the court of appeals. I know where it appears.  I'm sorry. I believe it starts at about 9. Second full paragraph. Well, the part that seems relevant to me is on top of page 11. Is that what you're looking at? I think that's where I'm at, actually. I'm sorry. I was looking at the court of appeal pagination. Are we talking about 11, the handwritten 11? No, I'm not. Go ahead. What are you relying on? I think I'm at the handwritten 12, typewritten 10, and then the very next page. The Court determined it was clear that between the time of the uncharged robberies and the first charged robbery, 11, at the top of 11, handwritten 13, the appellant had ample opportunity to alert the authorities. As explained below, it is this finding that establishes beyond a reasonable doubt that the trial court's application of the incorrect burden did not contribute to the verdict. The State court there was finding as a matter of California law that if there was ample opportunity to alert the authorities to protect himself and his family, you don't have duress. So therefore, the answer to my hypothetical had to be that even if this is why I asked you the question. Okay. If that in fact is California law, then as a matter of law, if he didn't go to the authorities after the first time somebody held a gun to his head, and if the same person held a gun to his head a second time, it's not duress. That has to be what you're saying. It's not duress? Not duress. If he held it to his head a second time? Right. Because he had ample opportunity to go to the authorities before or after the first time he held the gun to his head. Sure. If there is ample opportunity, then you don't have duress. Yes. Even if there's a – even if somebody comes up to him a second time with a gun and says, do this. Let me understand just the sequence of events. Okay. There's a sequence of these robberies. The uncharged robberies occurred. There was an interval when the court found he could have gone to the authorities. That's right. And then there were six more that were charged. That's true. And one of them, Mr. Dempry says, he was – he participated in the robbery, but only because there was a gun to his head. Is that correct? No. That's actually completely contrary to what the State court of appeal held that the facts were. Okay. So the record doesn't show that at the six – that in one of the six charged offenses, he was doing it at the point of a gun. There may or may not have been testimony consistent with that on behalf of one of the appellants, but it's pretty clear that the trial court did not believe that, and the State court of appeal did not find that as a fact. And why do you say that? It's nowhere in this record. What's nowhere in this record? The fact that there was a gun held to his head during one of the six charged robberies. There may have been testimony to that effect. It's not in the excerpt of record here where the State court of appeal was specifically relying on the facts, and it's not in the trial court's holding where he said, I find, and this is what I find is true. So you're saying implicitly the trial court discounted any testimony as to the robbery at the point of the gun. Absolutely. Because the trial court specifically held contrary to such facts. If such facts were testified to by any of the defendants, the trial court here said, I find you had ample opportunity to alert authorities. If there were indeed facts of duress on one of the six charged crimes, then there wouldn't have been ample opportunity to alert the authorities. Well, unless what he meant was that you could have gone, and that's what I thought he meant, frankly, was that there was time to go and tell you, tell the authorities that these people were threatening you, and if you'd done that, they would have been out of the picture and they wouldn't have been around to hold the gun to your head. Remember that the trial court did separate, and the State appellate court and the district court all found that there was a separation in the trial court's ruling, the holding, the verdict, basically, with regard to the uncharged robberies and the charged robberies. Now, from Excerpts of Record, page 1 and 2, it's clear that the trial court was separating out the facts of the duress with regards to the charged robberies and the uncharged robberies and the charged robberies that appellant was running around trying to get away from the various co-defendants, and that is when the trial court specifically found this is where you had ample opportunity to alert authorities, make sure your family was safe, that sort of thing. If there was not ample authority, if for some reason there was a gun to somebody to Mr. Mussoving's head during the commission of the first charged robbery, then the trial court would not have found this. I'm not seeing that, but your time is up, so thank you very much. You are actually out of time, but we'll give you 30 seconds or so. Thank you. Say one sentence that's necessary. One thing is the burden is on the State to show that there's no injurious effect under Brecht and contrary to what he said. Secondly, there is no credibility finding that Mr. Mussoving wasn't believable. Third, it makes no sense that the Court would apply different burdens of proof to charged and uncharged crimes. It's clear that the Court followed the DA's suggestion as to what the burden of proof was, and there's something wrong about relying on findings made under the wrong burden of proof to say that appears to be the wrong burden of proof. Suppose we agreed with you. What would be the remedy? Would the remedy be to go back to the same judge and say now you make other findings? I don't believe so, Your Honor. Why not? Well, because this is a verdict that's come down under the wrong burden of proof. We've never ---- Now he was there. He has the record. He can do it under the right burden of proof. I think that would deprive him of his due process rights to go back after all this time to have a finding by a judge on the question of guilt. The only contested issue was duress in this case. I don't think so, Your Honor. I can't imagine what would allow that. This is not some side question. It wouldn't be very logical to have a whole new trial before the same judge again who already had the trial. And where the burden of proof is put on the prosecution to deal with these questions. And by the way, the quote is on page AOB 14. There's a cite to it. He says, your co-defendant pointed a gun at you. He said, if I didn't do like he said, he was going to shoot me or my family. So the suggestion there wasn't in there. Thank you very much. I'm sorry. Thank you very much. The case of Moon-Se-Bang v. Lamarck is submitted.
judges: Goodwin, Berzon, Ikuta